IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DAVID ESLAVA, et al.,** ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Misc. Action No. 07-104 (RMC) |
| ) | |
| **GULF TELEPHONE COMPANY, INC.,** ) | |
| **et al.,** ) | |
| ) | |
| *Defendants*. ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE PETITION FOR COSTS AND ATTORNEYS' FEES

This matter arises from the refusal by Mr. Garofolo, Plaintiffs' counsel, of a simple accommodation requested by Defendants' counsel, i.e., that the deposition of Defendants' expert be conducted at the offices of Defendants' counsel, just a few blocks away from the court reporter's office where Plaintiffs insisted the deposition occur. This was not the first time Plaintiffs' counsel had refused such a simple accommodation. (Affidavit of Gregory Braden attached hereto, ¶¶ 5-6). While the Court has found that Defendants' counsel acted inappropriately and Defendants' counsel accepts with contrition that ruling, it is clear that Plaintiffs' counsel are not without fault and their untimely demand for over $15,000 in costs and fees for a deposition they adjourned should be denied.[1]

On May 22, 2007, Plaintiffs moved the Court for leave to file their petition for costs and attorney's fees ("Plaintiffs' Motion for Leave to File," Docket No. 6), some nineteen days after

---

[1] It now appears that Plaintiffs' counsel may have orchestrated this dispute for strategic reasons. Specifically, they have moved to preclude the testimony of Defendants' expert despite the fact that Defendants' counsel offered to make the expert available after the dispute and pay a portion of Plaintiffs' counsels' costs *before* this Court issued its Order. (Braden Affidavit ¶¶ 7-8). Thus, it is apparent that Plaintiffs are not motivated by a desire to depose Defendants' expert, they are motivated by a desire to capitalize on a dispute largely of their own creation.

May 3, 2007, the date that the Court ordered Plaintiffs to submit a petition for costs and attorneys' fees in its April 12, 2007 order. (the "Order," Docket No. 5) Plaintiffs concede that they completely missed the deadline to file their petition for costs and attorney's fees, but argue that their failure constitutes "excusable neglect" because their local counsel did not receive notice of the Order and because they were only made aware of the Order when checking this case's electronic docket on May 14, 2007, over a <u>month</u> after the Order was entered. (Docket No. 5 at 2-3.) For the reasons set forth herein, Plaintiffs' proffered justification for their tardiness do not constitute "excusable neglect." As such, Defendants respectfully ask the Court to deny Plaintiffs' motion for leave to file their petition for costs and attorneys' fees.

A.   **Plaintiffs' Actions Do Not Constitute "Excusable Neglect"**

It is undisputed that Plaintiffs did not file their petition for costs and attorneys' fees by May 3, 2007 as ordered by the Court. (Docket No. 5 at 2-3.) However, Plaintiffs argue that they possess "excusable neglect" justifying an exercise of the Court's powers under Federal Rule of Civil Procedure 6(b) to enlarge the period in which Plaintiffs may file their petition. (*Id.* at 3.) These efforts fall flat when stacked against this Court's precedent.

The factors involved in determining whether certain neglect is "excusable" include: the danger of prejudice to the non-movant party; the length of the delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was within the control of the movant; and whether the movant acted in good faith. *See Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Pigford v. Veneman*, 307 F. Supp. 2d 43, 50 (D.D.C. 2004). Although Plaintiffs claim that "the GulfTel defendants have not been prejudiced by a delay totaling 13 business days," this assertion is both self-serving and erroneous. The time period between the last day allowed by the Court for Plaintiffs' petition – May 3, 2007 – and the date of Plaintiffs' Motion for Leave to File – May 22, 2007 – is nineteen days, and Plaintiffs now

seek to avail themselves of a leniency that they refused to accord Defendants in their response to Defendants' motion for a protective order filed with this Court on March 21, 2007. (Docket No. 3 at 8-9.)

Moreover, the reason for the delay was plainly within the control of Plaintiffs' counsel. As the Court is well aware, filings in this case – including those entered by the Court – are made pursuant to the Court's CM/ECF electronic system. Local counsel for Plaintiffs, Benjamin Hahn, claimed that he did not receive electronic notice of the Order on April 12, 2007. (Docket No. 6, Ex. 5 at ¶ 4.) However, Mr. Hahn also confirmed that the Clerk of the Court "accurately maintained" his current e-mail address, that electronic notice "should have gone out in the ordinary course" and that he has "no explanation" for why he allegedly did not receive notice of the court's ruling.[2] (Id. at ¶¶ 3, 5, 6.) Mr. Hahn does not contend that his e-mail address was incorrect on the Court's records or that he changed his address or took any other inadvertent action that could result in non-delivery. More importantly, Mr. Hahn's alleged failure to receive electronic notification does not explain why it took Plaintiffs' primary counsel over one month (to check the Court's electronic docket to realize that the Court's Order (issued on April 12) required them to file their petition for costs and attorneys' fees by May 3, 2007.

It is a party's duty to monitor the docket "regardless of a lack of email notification," and the "excuse that the electronic filing system was malfunctioning [which is essentially what Plaintiffs argue] is unacceptable and unconvincing." *Laster v. District of Columbia*, 439 F. Supp. 2d 93, 100 (D.D.C. 2006). An attorney "may not simply sit back and rely on the court to keep him" up to date. *McMillian v. District of Columbia*, 233 F.R.D. 179, 182 (D.D.C. 2005) (internal cites omitted). "Allowing attorneys to do so would not only invite abuse, but would

---

[2] There has been no evidence presented that the e-mailed notice was returned as undeliverable to the Court.

remove the burden of vigilance from the advocates hired to pursue a client's interest." *Id.*

In *Fox v. American Airlines*, 389 F.3d 1291 (D.C. Cir. 2004), the United States Court of Appeals for the District of Columbia Circuit explicitly held that "excusable neglect" was not present in a situation strikingly similar to the one presently before the Court. In *Fox*, plaintiffs-appellants sought a reversal of this Court's dismissal of their complaint because they failed to respond to the defendant's motion to dismiss. Although the plaintiffs cited an alleged failure to receive electronic notice of the defendant's motion as justification for their failure to respond, the district court denied their motion to vacate the judgment. In upholding the district court's decision not to extend the time in which the party could file, the D.C. Circuit held that:

> the appellants offer nothing but an updated version of the classic "my dog ate my homework" line. They claim that, as a result of malfunction in the district court's CM/ECF electronic case filing system, their counsel never received an e-mail notifying him of American's motion to dismiss their amended complaint. Imperfect technology may make a better scapegoat than the family dog in today's world, but not so here. Their counsel's effort at explanation, even taken at face value, is plainly unacceptable. **Regardless of whether he received the e-mail notice, he remained obligated to monitor the court's docket.**

*Id.* at 1294 (emphasis added); *see also U.S. v. City of New York*, 248 F.3d 48, 53 (2d Cir. 2001) ("appellant's failure to file a timely notice of appeal is not excused by what he characterizes as the 'serious administrative errors' and docketing irregularities of the (United States District Court for the) Southern District (of New York)'s clerk's office, because parties have an obligation to monitor the docket sheet to inform themselves of the entry of orders they wish to appeal"); *Norgaard v. DuPuy Orthopaedics, Inc.*, 121 F.3d 1074, 1075 (7th Cir. 1997) ("Ignorance of the Supreme Court's docket, although 'neglect,' is not 'excusable' – it is nothing but negligence, which does not justify untimely action").

This is exactly the scenario presented by Plaintiffs, and their "good faith" is highly questionable in light of their failure to monitor the court's docket and their conduct in the

discovery process. Plaintiffs' petition for costs and attorneys' fees is both untimely and without "excusable neglect," and the Court should deny their motion for leave to file their petition.

**B.      Plaintiffs' Petition for Costs and Attorneys' Fees Is Excessive and Unreasonable**

Notwithstanding the fact that Plaintiffs' petition is untimely and that Plaintiffs have failed to show "excusable neglect" necessary for the Court to extend the time period in which to file the petition, the costs and attorneys' fees sought by Plaintiffs (over $15,000 for an aborted deposition) are also unreasonable and excessive. The Court's Order awards Plaintiffs' counsel "its reasonable costs and attorneys' fees incurred in attending the aborted deposition of Michael Balhoff and in responding to the instant Motion for Protective Order." (Docket No. 5 at 3.) These costs and fees would reasonably consist of the cost of transportation (air fare) the day before the deposition, one night in a hotel, and return airfare the next day after the deposition. It is therefore clear that much of the costs and fees sought by Plaintiffs is patently unreasonable.

   **1.      Mr. Garofolo's Excessive Costs**

First, Plaintiffs seek costs for taxis for attorney Joseph A. Garofolo from his San Francisco office to San Francisco International Airport (SFO) on March 4, 2007, and taxi fare from SFO to his office on March 7, 2007. The United States Court of Appeals for the District of Columbia Circuit has held that local travel in connection with an out-of-town trip is not a reimbursable cost. *In re Oliver L. North*, 94 F.3d 685, 692 (D.C. Cir. 1996).

Second, Mr. Garofolo submitted reimbursement for taxi fares to and from various locations within the Washington, D.C. metro area on the day that the deposition in question was to take place (March 6, 2007), but *also submitted the cost of a rental car* (and its fuel) for the day *after* the deposition was to take place (March 7, 2007) (Docket No. 6, Ex. 1.) Obviously Mr.

Garofolo cannot in good faith claim taxi and rental car reimbursements over two days for a deposition that he adjourned on March 6 before it started.

Third, Mr. Garofolo stayed in a D.C.-area hotel after the March 6 deposition failed to take place instead of returning to San Francisco (Docket No. 6, Ex. 1.) On identical facts, the Southern District of New York held that two nights of hotel charges was unreasonable for an aborted deposition. *In Re: Motel Six Securities Litigation*, 1996 U.S. Dist. LEXIS 9511 at *3 S.D.N.Y. 1996) ("Anderson failed to appear on the morning of May 7, 1996, Plaintiffs will be awarded only one day's charges related to the hotel").

Fourth, Mr. Garofolo demands reimbursement for five meals over three days, again for a one-day deposition that never occurred. The Court should disallow any expenses for meals on days other than March 5 and 6. (*Id.*).

## 2. Mr. Garofolo's Fee Claim is Patently Excessive

In addition, the billed time submitted by Mr. Garofolo contains several entries that are excessive. First, Mr. Garofolo seeks to be compensated for the time he traveled to and from Washington, D.C. (from/to San Francisco), a claimed total of 16 hours. (Docket No. 6, Ex. 1.) As an initial matter, Defendants note that Plaintiffs' choice of San Francisco counsel for a Mobile, Alabama lawsuit in which all witnesses are located in the Eastern United States, should not subject Defendants to unreasonable costs associated with counsel's travel. More specifically, Mr. Garofolo's choice of a connecting flight rather than a non-stop flight (which would take approximately five hours) should not be the basis for penalizing Defendants. Accordingly, Mr. Garofolo's claim of 16 hours of "travel time" is excessive.

In addition, Mr. Garofolo's declaration does not indicate that he did any work in preparation for the Balhoff deposition on his way from San Francisco to Washington on March 5 (a "red-eye" flight, Defendants note). Nor would he be entitled to reimbursement for preparation

time even if he had since that preparation time would be recoverable when he deposes Mr. Balhoff (as Defendants have offered). As Mr. Garofolo avers, he has a contingent fee arrangement with his clients and will seek a "common fund" recovery from any settlement or judgment in this matter. Accordingly, any recovery of fees by Mr. Garofolo would be a "double dip." Finally, it is clear that, if he is entitled to any reimbursement for "travel time" at all, the maximum rate would be 50%. *Palmer, et al. v. Condoleezza Rice, et al.*, 2005 U.S. Rev. Dist. LEXIS 13677 at *61 ("[I]t is standard practice for attorneys to bill at half of their rates when they are billing for pure travel time. . . ."); *In Re: Motel 6 Securities Litigation*, 1996 U.S. Dist. LEXIS 9511 at *5. In sum, if Mr. Garofolo is awarded fees for any "travel time," the award should be limited to a maximum of 50% of the approximately five hours it would take to fly direct from San Francisco to Washington, D.C.

Next, Mr. Garofolo maintains that it took him 19.8 hours to draft a response to Defendants' motion for protective order. (*Id.*) Many tasks performed in drafting this response, such as research and compilation of exhibits, are more appropriately performed by junior attorneys or paralegals rather than by an attorney at the rate of $375/hour. Moreover, his response to the protective order purported to accuse Defendants' counsel of discovery "abuses" in the underlying action (the same abuses engaged in by Plaintiffs) but wholly irrelevant to the sole issue before this Court. Third, the rate of $450 per hour claimed by Mr. Hahn is clearly excessive, especially since the work he did (reviewing and filing pleadings) could easily have been done by a paralegal. And, 19.8 hours to respond to a two-page motion for a protective order that raises a single discrete issue is excessive on its face, as is the claim of three hours for "attending" the Balhoff deposition that Mr. Garofolo adjourned.

Finally, Mr. Garofolo's claim rate of $375/hour is excessive. By way of comparison,

Defendants' counsel has been practicing law exclusively in the area of employee benefits for almost 25 years. (Braden Affidavit ¶ 2). He is a fellow in the American College of Employee Benefits Counsel, president of the Southern Employee Benefits Conference, author of numerous articles and publications on employee benefits topics, including serving as Senior Associate Editor of the Employee Benefits Law Treatise published by the American Bar Association Section of Labor and Employment Law. His rate in this matter is $375 per hour. Accordingly, Mr. Garofolo, having one quarter the experience, should receive no more than half of that rate at best.

In sum, Plaintiffs' petition is untimely, the delay in filing is not justified by "excusable neglect," and the costs and fees claimed are excessive. Defendants object to the imposition of these costs and fees, and submit to the Court that they constitute further evidence to support the rejection of Plaintiffs' requests.

## CONCLUSION

Based on the foregoing, Defendants respectfully request the Court to deny Plaintiffs' Motion for Leave to File Petition for Costs and Attorneys' Fees. If any costs and fees are awarded, they should not exceed $2,000 in the aggregate.

Date:   June 5, 2007                            Respectfully submitted,

/s/ Christopher A. Weals
Christopher A. Weals (DC Bar No. 414754)
Morgan Lewis & Bockius, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: 202.739.3000
Fax: 202.739.3001
Email: cweals@morganlewis.com

*Attorney for Defendants Gulf Telephone Company, Inc., Gulf Coast Services, Inc., Gulf Telephone Company Administrative Committee, Gulf*

*Telephone Company ESOP Plan Administrator, Escrow Committee, Dale Younce, Robert Younce, Woodard Setzer, Harold Killian, Willard Mitchem, Jo Gould Smith, Madison River Telephone Company LLC, Donald Roberton, Kenneth Amburn, Stephen Vanderwoude, Paul Sunu, Randy Wood, Millry Management Corporation, Paul Brown, and Gulf Merger Corporation*

OF COUNSEL:

Gregory C. Braden
Morgan Lewis & Bockius, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: 202.739.3000
Fax: 202.739.3001
Email: gbraden@morganlewis.com

**CERTIFICATE OF SERVICE**

I do hereby certify that on this 5th day of June, 2007 that I filed the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE PETITION FOR COSTS AND ATTORNEYS' FEES electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Benjamin W. Hahn    bhahn@schnader.com

David R. Godofsky    dgodofsky@alston.com

/s/ Christopher A. Weals
Christopher A. Weals (DC Bar No. 414754)

1-WA/2769751.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID ESLAVA, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>GULF TELEPHONE COMPANY, INC., )<br>et al., )<br>)<br>Defendants. ) | Misc. Action No. 07-104 (RMC) |

### AFFIDAVIT OF GREGORY C. BRADEN

The undersigned, being first duly sworn, deposes and states:

1. I am an adult resident of the District of Columbia, and I give this Affidavit in connection with the above-titled action.

2. I am an attorney licensed to practice in Georgia and Wisconsin (inactive) and have practiced in the area of employee benefits and ERISA litigation since 1982. I am lead counsel for several Defendants in the above-entitled action. I have authored numerous articles and spoken at numerous conferences on employee benefits matters and ERISA litigation. I am a Fellow in the American College of Employee Benefits Counsel, the president of the Southern Employee Benefits Conference, and associate senior editor of the Employee Benefits Law Treatise published by the American Bar Association Section of Labor and Employment Law, I have published numerous articles and spoken at numerous conferences and bar meetings on employee benefits topics, and I am listed in the *Best Lawyers in America*.

3. As an accommodation to the Plaintiffs in the above-entitled action, I agreed to make Defendants' expert, Michael Balhoff, available for deposition after the expiration of the

discovery deadline (which had already been extended once) on March 6, 2007. At that time, I was with the firm of Alston & Bird, which, as Plaintiffs' counsel was aware, has a Washington, D.C. office. It was my intention to make Mr. Balhoff available in my Washington, D.C. office, although I did not specifically communicate that fact to Plaintiffs until after receipt of the Subpoena issued by Plaintiffs.

4. Following issuance of the Subpoena, I contacted Plaintiffs' counsel and requested that the deposition occur at my Washington, D.C. office. Plaintiffs' counsel refused and I engaged Plaintiffs' counsel in an e-mail dialogue that ended the morning of the deposition.

5. Plaintiffs' counsels' refusal to accommodate my request followed a similar behavior with respect to depositions in this matter in Chicago. Specifically, Mr. Garofolo's co-counsel noticed the depositions of certain of Defendants' witnesses in Chicago, agreeing to depose them at the offices of Defendants' Chicago counsel. Mr. Garofolo, however, refused to agree to conduct the deposition of one of Defendants' experts at the same offices as his co-counsel, insisting for no apparent reason as he did in Washington, D.C., that the deposition occur at the offices of Esquire Reporting several blocks away from the other depositions noticed by Plaintiffs.

6. Accordingly, the dispute between the undersigned and Mr. Garofolo was not unprecedented, and Mr. Garofolo's refusal of a simple accommodation in both cases was, in the view of the undersigned in bad faith.

7. Notwithstanding Mr. Garofolo's refusal to take the deposition at the offices of Defendants' counsel on March 6, the undersigned subsequently offered to make Mr. Balhoff available for deposition and to pay a portion of the costs incurred by Mr. Garofolo in connection with the March 6, 2007 deposition. This offer was made by the undersigned in an attempt to

resolve this matter and was made before this Court issued its Order on Defendants' Motion for a Protective Order.

8.  Mr. Garofolo rejected the offer and declined to proceed with Mr. Balhoff's deposition.

9.  My hourly billing rate in this matter is a blended rate of $375.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
Gregory C. Braden

On this 5th day of June, before me ___D. Shrader___, the undersigned, Gregory C. Braden, personally appeared, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purpose therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

My Commission expires 2-28-2010.

District of Columbia : SS
Subscribed and Sworn to before me, in my presence, this 5th day of June, 2007

_____
Notary Public, D.C.
My commission expires 2-28-2010

Denise E. Shrader
Notary Public, District of Columbia
My Commission Expires 2-28-2010