**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DAVID ESLAVA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GULF TELEPHONE COMPANY, | ) | Civil Action No. 1:07MS00104 (RMC) |
| INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE
TO FILE PETITION FOR COSTS AND ATTORNEYS' FEES**

Plaintiffs hereby reply to Defendants' Opposition to Plaintiffs' Motion for Leave to File

Petition for Costs and Attorneys' Fees (Dkt. No. 7) ("Opposition").

**I.      INTRODUCTION**

Defendants' Opposition makes clear that lead counsel for the Defendants has no

appreciation for the Court's Order dated April 12, 2007 (Dkt. No. 5).  In that Order, the Court

held that Defendants' motion for protective order (Dkt. No. 1)[1] was "brought in bad faith and for

oppressive reasons" (Order at 3) and that "GulfTel's argument that the deposition needs to be

relocated to accommodate the witness is an invention of a lawyer."  (*Id.*).  Accordingly, the

Court granted Plaintiffs their reasonable costs and attorneys' fees incurred in attending the

aborted deposition of Defendants' putative expert and in responding to Defendants' motion for

protective order.  (*Id.* at 3).

---

[1]  Defendants' motion for protective order filed after the date of the deposition noticed pursuant to a subpoena, sought to alter the location of the deposition based solely on the purported grounds that Defendants' counsel had "other business at his Washington DC office and need to be at that office"  (GulfTel Defendants' Motion for Protective Order at 2).

Instead of expressing genuine contrition for actions that the Court properly characterized as being made in bad faith, Defendants' counsel has proceeded to reassert many of the same arguments made in his motion for protective order. In addition, Defendants' counsel levels new unfounded accusations at Plaintiffs' counsel including, *inter alia*, the following: i) Plaintiffs' counsel "adjourned" the deposition (Opposition at 1, 6); ii) Plaintiffs' counsel "orchestrated this dispute for strategic reasons,"[2] (*id*. at 1, n.1); and iii) Plaintiffs' counsel has generally acted "in bad faith." (Braden Aff., ¶ 6) (Dkt. No. 8). Plaintiffs and the Court are left to wonder how Plaintiffs adjourned a deposition that Defendants refused to attend in bad faith and how Plaintiffs' counsel could have known that Defendants' counsel would act in bad faith before the deposition so that he could "orchestrate this dispute for strategic reasons."

When Defendants finally attempt to address the motion currently before the Court, they assert a number of specious arguments and then blatantly misrepresent the facts relating to the reasonableness of Plaintiffs' counsel's costs and fees. Defendants have failed to provide any legitimate analysis of the substance of three of the four factors that should be considered by a Court in applying the excusable neglect standard. This is because, when taken together, those factors support a finding that Plaintiffs' failure to timely file their petition for costs and fees constitutes excusable neglect. Therefore, it is well within this Court's discretion to grant Plaintiffs' motion and award the requested costs and fees which, as discussed below, are reasonable.

## II.     ARGUMENT

---

[2] Plaintiffs note that Defendants offered air fare costs when offering to make Mr. Balhoff available after Plaintiffs had already been forced to retain local counsel and file a response to Defendants' motion for protective order. Plaintiffs attempted to resolve the issue by accepting no attorneys' fees (with the exception of those of local counsel), but Defendants' lead counsel refused Plaintiffs' offer and actually threatened to move for sanctions against Plaintiffs. (4/2/07 Email string attached hereto as Ex. 1).

**A.    The Four Factors Considered In Determining Excusable Neglect Strongly Support a Finding that Plaintiffs' Motion Should Be Granted.**

The parties agree that four factors are relevant for the Court to consider in applying the excusable neglect standard: "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380. 395 (1993)); (*see* Opposition at 2).

After first noting that a district court has discretion pursuant to Fed. R. Civ. P. 6(b) to modify an order, the United States Court of Appeals for the District of Columbia explained the following in upholding a district court judge's finding of excusable neglect:

> The district judge in the current case evaluated the factors articulated, and found that UCB would not be substantially prejudiced by Hill's Pet's untimely opt-out; the length of the delay was short and would not impact judicial proceedings; and that there was no indication that Hill's Pet had acted in bad faith. The court also found that the reason for the delay was within Hill's Pet's reasonable control but that the other factors outweighed the impact of this finding, and consequently granted Hill's Pet's motion to modify the final order.
>
> On appeal, UCB urges this court to adopt a *per se* rule that garden variety attorney inattention can never constitute excusable neglect. We decline and uphold the district court. The *Pioneer* standard precludes the adoption of any such *per se* rule. The Court in *Pioneer* purposely fashioned a flexible rule which, by its nature, counsels against the imposition of a *per se* rule on attorney neglect. "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' ... is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."

*Vitamins Antitrust*, 327 F.3d at 1209-10 (citations omitted).     The wide latitude granted to district courts was previously discussed by the Court of Appeals in *Yesudian v. Howard University*.  270 F.3d. 969, 971 ( D.C. Cir. 2001) ("Thus, given the great deference we owe district courts in what are effectively their 'case management decision,'…there was no reversible error in the court's decision to accept Parker's late filing.") .

Despite Defendants' assertions to the contrary, an analysis of the four factors demonstrates that Plaintiffs' failure to timely file their petition for costs and fees constitutes excusable neglect.  With respect to the first fact, prejudice to the opposing party, Defendants contend that they have been prejudiced by a 13 business day delay by Plaintiffs in filing their motion for leave to file their petition for costs and fees.  However, the most Defendants can muster as purported support for their contention is that "Plaintiffs now seek to avail themselves of a leniency that they refused to accord Defendants in their response to Defendants' motion for protective order."  (Opposition at 2-3).  Plaintiffs are uncertain how this statement demonstrates even a modicum of prejudice to Defendants.

As far as the second factor, the length of the delay and the impact on judicial proceedings, Defendants cannot legitimately contend that a 13 business day delay is a long delay or had any impact on the instant proceedings.  *See Vitamins Antitrust*, 327 F.3d at 1209.  Plaintiffs again apologize to the Court for the additional burden on the Court which undoubtedly has a full docket.  Plaintiffs do, however, note that this entire matter was brought before the Court due to Defendants filing of a frivolous motion for protective order.

Moving to the third factor, the reason for the delay, Defendants devote all of their efforts to emphasizing this factor at the expense of the others.  While Plaintiffs concede that counsel could have monitored the docket more closely, the cases cited by the Defendants simply stand

for the proposition that it is within the Court's discretion to refuse to consider untimely motions and responses when counsel claims he or she received no, or inadequate, notice. *Fox v. American Airlines*, 389 F.3d 1291, 1293-95 (D.C. Cir. 2004); *Laster v. District of Columbia*, 439 F.Supp. 2d 93, 100 (D.D.C 2006) ("Because the defendants received adequate notice and because the defendants do not show that the expedited briefing schedule affected their ability to oppose the plaintiffs' motion, the court declines to alter or amend its judgment."); *McMillian v. District of Columbia*, 233 F.R.D. 179, 181-82 (D.D.C. 2005). Notably, none of these decisions within this Circuit expressly analyze Fed. R. Civ. P. 6(b) and the factors relating to excusable neglect.

Finally, with respect to the fourth factor, Defendants erroneously assert that Plaintiffs " "'good faith'" is highly questionable in light of their failure to monitor the court's docket and their conduct in the discovery process." (Opposition at 4-5). The first part of Defenants' statement seeks to eliminate the fourth factor by incorporating it into the third and thus provides no support for a lack of good faith. Plaintiffs' good faith has been demonstrated by their effort to file the instant motion as soon as possible after the Court's Order was discovered. The second part of the statement regarding Plaintiffs' conduct in discovery process should not be countenanced by the Court considering that it has already considered and rejected Defendants' contention in holding that "Plaintiffs counsel had the right to name the time and place of the deposition" and that "GulfTel's motion [for protective order did] not even attempt to explain why the witness [could not] appear at Esquire Reporting Services." (Order at 2-3).

One additional reason that supports the conclusion that Plaintiffs' motion should be granted is the deterrent effect on Defendants' lead counsel. Based on the tone of Defendants' Opposition, Plaintiffs believe that lead counsel would likely engage in exactly the same behavior

that this Court recognized constituted bad faith. Perhaps an award of costs and fees would deter future abuses by Defendants' lead counsel.

Accordingly, based on the excusable neglect standard and the general equities involved, this Court should exercise its discretion and grant Plaintiffs' Motion for Leave to File Petition for Costs and Attorneys' Fees. *Vitamins Antitrust*, 327 F.3d at 1209-10; *Yesudian*, 270 F.3d. at 971.

**B.     Plaintiffs Costs and Fees Are Eminently Reasonable.**

Defendants challenge virtually every cost submitted by Plaintiffs' counsel as well as Plaintiffs' attorneys' fees. Not only do Defendants misrepresent the facts, they ask the Court to dispense with its common sense. Many of the arguments challenging Plaintiffs' costs and fees are advanced without supporting authority. Plaintiffs will address Defendants' attacks relating to Plaintiffs' counsel's claim for fees first.

**1.     Plaintiffs' counsel's fees are reasonable and Defendants assertions to the contrary are based on blatant misrepresentations or unsupportable premises.**

Perhaps the most egregious misrepresentation of Defendants relates to the hourly rate of Plaintiffs' counsel. Defendants contend that Mr. Garofolo's rate of $375 per hour is excessive because "[b]y way of comparison, Defendants' counsel has been practicing law exclusively in the are of employee benefits for almost 25 years" and "[h]is rate in this matter is $375 per hour." (Opposition at 8). This statement is false. In his affidavit, Mr. Braden admits that his "hourly billing rate in this matter is a *blended* rate of $375." (Braden Aff., ¶ 9). Conveniently omitted from Defendants' Opposition is the word "blended." (Opposition at 8). If there is any doubt what is meant by blended, Mr. Braden explained it when he attempted to sanction Plaintiffs' counsel more than a year ago (his motion was denied). Mr. Braden explained that "[p]ursuant to the rate agreement with our clients and their insureds, all attorney time is billed at [sic] 'blended' rate of $350 per hour." (Affidavit of Gregory C. Braden attached hereto as Ex. 2, ¶ 7). Thus,

Mr. Braden charges his clients $375 per hour regardless of whether a partner works on the matter or a first year associate does.  Thus, Defendants' contention that Mr. Braden with almost 25 years of experience is charging the same rate as Mr. Garofolo is an outright falsehood. Plaintiffs' counsel's hourly rate is reasonable and is supported by an affidavit of another San Francisco attorney. (Plfs'. Mot. for Leave to File Petition for Costs and Attorneys' Fees ("Motion for Leave") (Dkt. No. 6), Ex. 2).

Defendants also challenge Plaintiffs' counsel's submission of travel time from San Francisco to Washington, D.C. based on the argument that it is unreasonable to ask Defendants' counsel (who has acted in bad faith) to pay for the travel time of a San Francisco lawyer litigating a case in Alabama.  (Opposition at 6).  Plaintiffs maintain that it is common for specialized lawyers in fields of law such as ERISA to represent out of state clients involved in complex litigation.   Plaintiffs should not be restricted in their choice of counsel or an award of fees because they have selected specialized out of state counsel.  The hypocrisy of Defendants' position is that Mr. Braden is currently a Washington, D.C. attorney litigating a case in Alabama and Plaintiffs feel confident that Mr. Braden would seek his travel costs if Plaintiffs engaged in conduct even remotely similar to that in which he has engaged.

Defendants next protest "Mr. Garofolo's choice of a connecting flight rather than a non-stop flight (which would take approximately five hours)."  (Opposition at 6).  Of course, the connecting flight was cheaper and that is why it was chosen.  It would have been more convenient to take a non-stop flight, but counsel was considering Plaintiffs' costs.

Continuing their challenge of virtually every aspect of Plaintiffs' counsel's trip, Defendants contend that Plaintiffs' counsel is not entitled to fees because he is on a contingent fee arrangement and will seek a common fund recovery from any settlement and thus a recovery

of fees would constitute a "double dip." (Opposition at 7). Defendants cite no authority for this proposition because it defies reason. Plaintiffs have to first prevail in the lawsuit in order to receive any common fund recovery. Are Defendants willing to concede that Plaintiffs will prevail in the lawsuit? In the event that Plaintiffs prevail in the lawsuit, the United States District Court for the Southern District of Alabama will be fully informed of any compensation that has been received prior to approving compensation from any common fund that might be created. Plaintiffs further note that if Defendants' absurd contention were to be accepted by the Court, sanctions could never be recovered by attorneys on contingency no matter how egregious the discovery abuse.

With respect to Defendants' contention that Plaintiffs' counsel's hourly rate should be reduced by half when traveling, Plaintiffs' counsel conservatively interpreted this Court's Order and did not submit any time for deposition preparation which was substantial. Further, Plaintiffs did not submit any charge for the remainder of the day of March 6, 2007 after Defendants' lead counsel failed to produced Mr. Balhoff when Plaintiffs' counsel remained in Washington, D.C. due to the fact that, as described below, he had purchased a non-refundable ticket reasonably expecting that the witness would appear for his deposition. Under these facts and circumstances, Plaintiffs' counsel should be compensated at his $375 hourly rate for travel time because such travel time was reasonably incurred in expectation of attending a deposition noticed pursuant to a subpoena. Any other result would not adequately compensate Plaintiffs' counsel for his time, especially since another deposition may be required for which travel time may not be awarded.

As far as the amount of hours expended by Plaintiffs counsel in responding to Defendants' motion for protective order, Plaintiffs counsel provided a detailed description of the hours spent and the Court can evaluate whether or not such time was reasonable. (Motion for

Leave, Ex. 1 at 3).  Plaintiffs' counsel, a sole practitioner, spent 4.5 hours conducting research for the response, 8.9 hours drafting, and 3.1 hours revising the response.  (*Id*.).  Plaintiffs' counsel spent 1.5 hours reviewing emails to compile exhibits for the response and an additional 1.1 hours drafting a declaration (work that could not have been completed by a paralegal because of the necessity of a working knowledge of the facts preceding Defendants' lead counsel's failure to produce the witness). (*Id*.).  Plaintiffs' were fully familiar with the type of arguments that Defendants would (and did) make in their reply (Dkt. No. 4) and thus Plaintiffs' counsel provided a sufficiently detailed brief to assist the Court in understanding the nature of the dispute at issue.  Similar to the misrepresentations contained in Defendants' Opposition, Plaintiffs counsel expected that Defendants would file a reply which distorted the facts and believed that it was important to include relevant emails and a background of the events leading up to the failure of Defendants' lead counsel to produce Mr. Balhoff at the deposition.

Finally, Defendants' contention that Plaintiffs' local counsel's hourly rate of $450 is "clearly excessive, especially since the work he did (reviewing and filing pleading) could easily have been done by a paralegal" (Opposition at 7) should be rejected by the Court.  As the attorney who filed Plaintiffs response who is required to be admitted to practice before the United States District Court for the District of Columbia, local counsel has an obligation to review filings and cannot properly delegate such review solely to a paralegal.

### 2.    Plaintiffs' costs are also reasonable.

Defendants continue by challenging virtually every cost submitted by Plaintiffs. (Opposition at 5-6).  First Defendants challenge the local travel costs for an out of town trip. However, Defendants neglect to mention that Plaintiffs' counsel stayed at an economy hotel in Arlington at a rate of $117.00 per night (Motion for Leave, Ex. 1 at 8), when Plaintiffs' counsel

could have stayed in Washington, D.C. and incurred more hotel costs, but less travel costs. Based on Plaintiffs' counsel's understanding and review of costs of hotels in Washington, D.C., the cost saved by staying in Arlington far exceeded the cost of the taxi fares to and from the deposition totaling $41.85. Defendants further complain about the costs of a rental car when Plaintiffs also submitted costs for the taxi to the deposition. (Opposition at 5-6). Plaintiffs' avoided taxi fares from the airport with the rental car and Plaintiffs further submit that all day parking for the rental car in Washington, D.C. would not have been much less than the cab fare expended from an economy hotel in Arlington.

Defendants' additional challenges relating to costs involve the fact that Plaintiffs' counsel stayed in Washington D.C. overnight after Defendants failed to appear at the deposition. (*Id.* at 5-6). For example, Defendants contend that "Mr. Garofolo cannot in good faith claim taxi and rental car reimbursements over two days for a deposition that he adjourned on March 6 before it started." (*Id.*). Notwithstanding the fact that Plaintiffs' counsel did not adjourn the deposition, Defendants are incorrect about the legitimacy of Mr. Garofolo's overnight stay on March 6, 2007. Plaintiffs' counsel purchased a non-refundable ticket (that was cheaper than a refundable ticket) on February 23, 2007. (Motion for Leave, Ex. 1 at 6). Such choice was reasonable considering that the deposition involved Defendants' valuation expert who Plaintiffs anticipated deposing for the full seven hour permitted under the Federal Rules of Civil Procedure. The ticket could only be transferred for $100.00 plus payment of the difference of the price of air fare from Washington, D.C. to San Francisco on March 6, 2007. The $100.00 change fee plus the difference in price of the air fare that day would have exceeded the cost of the hotel, rental car, and meals combined.

The only case cited in support of Defendants contention that Plaintiffs' counsel should not have stayed overnight on March 6 is *In Re: Motel Six Securities Litigation*, No. 93 Civ. 2183 (JFK), 1996 WL 383234 (S.D.N.Y. July 8, 1996). However, far from being "identical on facts" as Defendants assert (Opposition at 6), that case involved a situation where the attorneys stayed at the location of the aborted deposition for two additional days in order to attend another deposition. *Motel Six*, 1996 WL 383234 at * 1. In the instant case, Plaintiffs counsel traveled to Washington D.C. solely for the purpose of taking the Balhoff deposition and could not conduct other Washington, D.C. business after the aborted deposition. However, notably Plaintiffs do not seek attorneys' fees for the entire day of the March 6, 2007 deposition (only for the three hours in attending the aborted deposition in hopes that Defendants' lead counsel would act in good faith and realize that he was required to produce Mr. Balhoff). (Motion for Leave, Ex. 1 at 3).

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File Petition for Costs and Attorneys' Fees should be granted. The bad faith conduct of Defendants' lead counsel in failing to produce Mr. Balhoff merits an award of the entire amount of fees requested by Plaintiffs which are reasonable.

Respectfully submitted,

_____/s/_____
Benjamin Hahn (Bar No. 446270)
Schnader Harrison Segal & Lewis LLP
2001 Pennsylvania Avenue, NW, Suite 300
Washington, DC   20006-1825
Phone:  (202) 419-4242
Fax: (202) 419-4243
Email: bhahn@schnader.com

OF COUNSEL:
Joseph A. Garofolo (Cal. Bar 214614)

Law Office of Joseph A. Garofolo
88 King Street, Suite 806
San Francisco, CA 94107
Phone: (415) 517-5307
Fax: (415) 348-1515
Email: erisalaw@sbcglobal.net

*Attorney for Plaintiffs David Eslava, Robert Kaiser,
Jon Hartman, and Thomas Faison*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 15, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following:

David F. Godofsky          dgodofsky@alston.com

Christopher A. Weals        cweals@morganlewis.com,
                                hvonthielen@morganlewis.com

_____/s/_____
        Benjamin W. Hahn

Exhibit 1

| | |
|---|---|
| **Subject:** | RE: Eslava: Plaintiffs' Offer to Resolve Issues Relating to Balhoff Deposition |
| **Date:** | Mon, 2 Apr 2007 18:10:19 -0400 |
| **From:** | "Braden, Greg" <Greg.Braden@alston.com> |
| **To:** | "Joseph Garofolo" <erisalaw@sbcglobal.net> |
| **CC:** | "Mark Kirkpatrick" <mkirkpatrick@cdklaw.com>, "Tom Benton" <tbenton@mlrlawyers.com> |

You have heard from me.


Gregory C. Braden
Alston & Bird
1201 West Peachtree St.
Atlanta, Georgia 30309
(404) 881-7497 - phone
(404) 831-0041 - cell
(404) 881-7777 - fax
gbraden@alston.com

---

**From:** Joseph Garofolo [mailto:erisalaw@sbcglobal.net]
**Sent:** Monday, April 02, 2007 6:07 PM
**To:** Braden, Greg
**Cc:** Mark Kirkpatrick; Tom Benton
**Subject:** RE: Eslava: Plaintiffs' Offer to Resolve Issues Relating to Balhoff Deposition

Dear Greg:

While I still have not read your response, I do not see how you could possibly be requesting costs and fees.  Such a request is frivolous and your previous conduct cannot be justified.

I look forward to hearing from you regarding my offer.

Best regards,

Joe

**"Braden, Greg" <Greg.Braden@alston.com>** wrote:

> The offer to pay your airfare was to avoid the greater expense of responding.  That is no longer possible.  If you want to resolve this, we will make Balhoff available on a mutually agreeable date and we will withdraw our motion for costs and fees if you do.  Offer is open until 8pm EST.
> Gregory C. Braden
> Alston & Bird
> 1201 West Peachtree St.
> Atlanta, Georgia 30309
> (404) 881-7497 - phone
> (404) 831-0041 - cell
> (404) 881-7777 - fax
> gbraden@alston.com

---

**From:** Joseph Garofolo [mailto:erisalaw@sbcglobal.net]
**Sent:** Monday, April 02, 2007 4:40 PM
**To:** Braden, Greg
**Cc:** Pridgen, Nancy; Varney, Peter; Tom Benton; Mark Kirkpatrick; Ben Hahn
**Subject:** RE: Eslava: Plaintiffs' Offer to Resolve Issues Relating to Balhoff Deposition

Dear Greg:

Although I see that you have just filed a response to Plaintiffs' Motion to Preclude (which I have not read) based apparently on your unreasonable late Friday email ultimatum demanding a response by Saturday, I am still willing to compromise this without a Court decision. Plaintiffs offer is that, at a minimum, you bear all costs, including those of Mr. Clawson, my airfare and lodging, and the cost of retaining Washington, D.C. local counsel in this matter.

This is an extremely accommodating offer considering that two briefs have had to be filed by the Plaintiffs after your unjustifiable failure to produce Mr. Balhoff at the noticed location. Please let me whether you will agree to these terms.

Best regards,

Joe

***"Braden, Greg" <Greg.Braden@alston.com>*** wrote:

Joe, the Defendants will agree to pay your airfare and nothing else in order to spare Judge Bivins this exercise and the expense of preparing for it. We will make Balhoff available on a mutually agreeable date over the next 45 days. This is our final offer to resolve this matter and will expire at 5pm tomorrow. Obviously, if you do not wish to accept, we will oppose your motion and any attempt to depose Mr. Balhoff, and we will seek sanctions as well.

Gregory C. Braden
Alston & Bird
1201 West Peachtree St.
Atlanta, Georgia 30309
(404) 881-7497 - phone
(404) 831-0041 - cell
(404) 881-7777 - fax
gbraden@alston.com

---

**From:** Joseph Garofolo [mailto:erisalaw@sbcglobal.net]
**Sent:** Friday, March 30, 2007 5:00 PM
**To:** Braden, Greg
**Cc:** Pridgen, Nancy; Varney, Peter; Tom Benton; Mark Kirkpatrick; Ben Hahn
**Subject:** Eslava: Plaintiffs' Offer to Resolve Issues Relating to Balhoff Deposition

Dear Greg:

Please find attached a letter relating to our discussion on March 28, 2007 regarding Plaintiffs' Motion to Preclude Defendants from Offering the Testimony of Their Putative Expert Michael J. Balhoff (Doc. 535).

Best regards,

Joe

Joseph A. Garofolo, Esq.
Law Office of Joseph A. Garofolo
2125 Oak Grove Road, Suite 110
Walnut Creek, CA 94598
Telephone: (925) 926-0524
Fax: (925) 926-0521

Exhibit 2

# Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DAVID ESLAVA, et al.,         )
                                         )
       Plaintiffs,           )
                                         )
v.                                   )    CIVIL ACTION NO. 04-297-KD-B
                                         )
GULF TELEPHONE COMPANY, INC.,   )
et al.,                              )
                                         )
       Defendants.        )

## <u>AFFIDAVIT OF GREGORY C. BRADEN</u>

Gregory C. Braden, first duly sworn, deposes and states:

1.      I am an attorney licensed to practice in the State of Georgia and am a partner in the law firm of Alston & Bird.  My business address is 1201 West Peachtree Street, Atlanta, Georgia 30309.

2.      I have practiced law exclusively in the area of ERISA litigation and employee benefits for 24 years.  I am a Fellow in the American College of Employee Benefits counsel, I am listed in <u>Best Lawyers in America</u>, I am nationally ranked in <u>Chambers USA, America's Leading Lawyers for Business</u>, I am "Georgia Super Lawyer", I have an "AV" rating from the American Bar Association, I am the president elect of the Southern Employee Benefits Conference, a member of the ESOP Association, an adjunct professor of law at Emory Law School and a Senior Associate Editor of the ABA Labor Section Employee Benefits Law Treatise.

3.      My firm employs Leslie Bassett and Nancy Pridgen, who both work with me in the above entitled action.

4.    Ms. Bassett received her J.D., cum laude, in 2003 from Emory University School of Law where she served as Executive Managing Editor of the Bankruptcy Developments Journal. Ms. Bassett's publications include "Corporate Scandals: Practical Lessons for Lawyers Representing Issuers," The Corporate Governance Advisor, July/August 2004. Ms. Bassett's practice focuses on ERISA litigation. She is a member of the Georgia Bar and the American Bar Association.

5.    Nancy Pridgen is a 2000 graduate of the Vanderbilt University Law School. Upon graduating law school, Ms. Pridgen completed judicial clerkships for two federal district court judges, the Honorable Paul D. Borman, United States District Court Judge in the Eastern District of Michigan, and the Honorable James G. Carr, United States District Court Chief Judge for the Northern District of Ohio. Prior to joining Alston & Bird, Ms. Pridgen served as an Assistant Attorney General for the Michigan Attorney General's Office, as well as an Assistant U.S. Attorney at the U.S. Attorney's Office in Detroit. Ms. Pridgen's practice focuses on ERISA and other complex federal litigation.

6.    Based upon the time and billing records maintained by my firm, Ms. Pridgen spent 2.6 hours on July 19, 2006 performing research and responding to Plaintiffs' Emergency Motion to Quash (Doc. #258) ("Plaintiffs' Motion"). Ms. Bassett spent 3.0 hours researching and responding to Plaintiff's Motion. I spent 4.1 hours responding to Plaintiffs' Motion, including formulating arguments, drafting the response, and preparing for and attending the telephonic hearing on that Motion.

7.    Pursuant to the rate agreement with our clients and their insureds, all attorney time is billed at "blended" rate of $350 per hour. Accordingly,  the Gulftel Defendants incurred a total of $3,395 in fees for responding to Plaintiffs' Motion.

Gregory C. Braden

Sworn to and subscribed before me
this 25 day of July        , 2006.

(Signed)    Lisa M. Walston
                (Notary Public)
My Commission Expires: 6-26-07

NOTARIAL SEAL

LISA M. WALSTON
NOTARY
EXPIRES
GEORGIA
JUNE 26 2007
PUBLIC
COBB COUNTY

LEGAL02/30024439v1